the next model is Kaplan v. Saint Peter's Healthcare System, headquartered in New Brunswick, New Jersey. It's comprised of a single hospital and four other non-profit healthcare facilities, a nursing home, a surgery center, an outpatient clinic for the poor, and a home for child victims of sexual abuse. You also have a number of facilities, companies or firms that are associated with Saint Peter's owned by them. One is a debt collection firm, I believe it's mentioned in the briefs, and a solar energy firm, is that right? Yes, the debt collection company is non-existent, it just was formed and has never operated. Let's assume it was formed and operated. To the extent that you want us to interpret the risk exclusion the way you're arguing, let's assume that we're extending that to a commercial debt collection firm that was functioning the same as all these other debt collection firms that are out there, except that the controlling interest was owned by Saint Peter's. If we follow your interpretation of the exclusion under subsection 33, what would that do just in terms of a common sense application of the law, and given the legislative history you want us to rely upon in Senator Talmadge's statements, wouldn't that be stretching it a bit far? Again, I haven't considered this, but I think ERISA has a separate exception to the exception for activities that are profit making. They're not really related to the... Right, but we're not talking about that here. Right. The sole member of Saint Peter's is the Bishop of Metuchen, who controls the board, and its association with the church is very firmly established, not only by the control by the blessing in the official Catholic directory, and by its certificate of incorporation of Bibles, which require it to follow the laws in teaching the Catholic church and the ethical and religious directives put by the National Council of Bishops. And that's all good. The problem I need your help with is it talks about in paragraph 33A that you need to be established and maintained. Two words, established and maintained by a church or an association of churches. And later on it looks like the maintenance part can be done by another entity. But nowhere do they ever say that the establishment can be done by that other entity. It has to be done by the church or the association of churches. I don't think so. And let me put it in perspective. We have the basic definition... Okay, just get me around. What does A say? Established and maintained, right? That's the basic definition. It says established and maintained for its employees by a church. And then there was an amendment later on that says that maintained can be done by an agency. I'm just following logic here. I'm not trying to... Okay, so let's take logic. And I submit if we look at C, C expands the definitions that are in A and they give you alternative ways of satisfying the requirements. With respect to maintenance. But it conspicuously omits the word established. Don't we have to give effect to that omission? I think we do because if you look at C, it says a plan established and maintained. It gives you two ways to satisfy two parts of the definition. But A says established and maintained. It says C. No, C says, I have it in front of me, a plan established and maintained for its employees by a church includes a plan maintained by an organization. So if you are a plan maintained... Not a plan established and maintained, a plan maintained. Correct. So if you have a plan that's maintained by that organization, which we say is the St. Peter's Health Plan Committee, and that committee is controlled by or associated with the church, you are a plan established and maintained for its employees by a church. That's an alternative way of satisfying A. Because under the plaintiff's reading, they would say that C really says a plan maintained for its employees by a church includes a plan maintained by this committee. But it doesn't say that. It says a plan established and maintained for its employees. But you just said you just read A out of the statute. No. I think we've given two ways to satisfy that requirement. So let me give you the other way. A says it has to be for its employees by a church. Right? So what's the word employees? The plaintiffs concede in their brief that in a normal pension situation, you can only have a plan that applies to your employees. But C says, no, we're going to expand that definition. But C expands that to all the associations. Of course it expands it. And we have to read C1 in the same expansive way. And there are other ways where we expand the definition elsewhere in the same statute. And I give you another example of why this is so, and I think it's clear. If you look at the Internal Revenue Code, which I think everyone concedes, the same language in ERISA was then put into the Internal Revenue Code, and it's Section 414E, which is identical to 333. But the one difference is that in the Internal Revenue Code, they had helpful headings that were written and adopted as part of the statute. And the heading that precedes C1 says treatment as a church plan. So if you meet the requirement of C1, you're treated as a church plan. So if we have the St. Peter's plan that is controlled and associated with the church, and it establishes and it supervises a plan for employees of the church, which under C2.2, the employees of St. Peter's are deemed employees of the church, again an expansion of the definition in A, then you're treated like a church plan. That's the heading, and I think it flows very naturally. So it need not be established by a church. No, that's correct. As long as the plan is established by some group. That's established to me. Let me just finish my question. I'm sorry. I apologize. As long as it's established by some association, some group that's associated with the church, then it can benefit from the church exemption to ERISA. Correct. I thought A states pretty plainly that the church exemption requires that the plan be established by a church. And then as long as the church establishes the plan, then all of those organizations that are associated with the church and all of their employees get the benefit of the church exemption, as long as they satisfy those other criteria, which I'm not sure that much in dispute here. Why isn't that the most coherent way to read the statute? Without reading any out of it. I can give you two answers to that. The second has to do with the legislative history, but the first really has to do with the construction of ERISA itself. It is a common way that ERISA takes definitions and then they expand it through other language. And another example of that is in the government plan exclusion. Because the government plan exclusion also includes railroad plans and plans of international organizations. But those plans are not government plans, and the workers are private employees. Yet the statute expands the definition with the word includes. That take the instance of Indian tribes. Tribal plans were, there was an Eighth Circuit opinion which said tribal plans are not government plans. So ERISA amended it and said, well, we include that in the government exception. Again, it's taking the basic definition and it's expanding it and finding other ways to meet it. ERISA does that with fiduciaries. There's a detailed definition of fiduciaries in Section 321A, which says what are fiduciaries. Then it says, but it also includes any other person that's referred to as a fiduciary in the plan document. So it's very common in ERISA where they take a definition, in this case A, and as they said in Congress we're going to stay with the basic definition. But yet they expanded it to meet the particular needs they were trying to address. And that takes us to the legislative history. Because what happened in 1980, the focus was not on who established the plan. The focus was on we're going to include the plans of these church agencies because the church agencies are so important to the mission of the church. We had strong objections by a group, a coalition of religious groups, that objected to a 1977 ruling by the General Counsel of the IRS. And that was right after a proposed regulation where the IRS was trying to decide what's a church. That a church is only if you pray. And that's in effect what this General Counsel memorandum was. It was a group of sisters that had a health care facility. And they said, well, maybe it's part of a church function, but it's not sacramental. Who established the plan in that case? In that case it was the sisters. It was not the church itself. It was the health care agency that established it. The church didn't have an established plan? No, they did not establish it. And the IRS said, no dice. That's not good enough. And what happened? You had all these groups that filed all these letters, and we have them in our appendix at A124 to 128 saying, who is the IRS to decide what's important to our church? We think this is an important function, and we don't want the IRS telling us what's important to the church or not. And then you have Senator Talmadge. And, again, I think there was a strong intent in the legislative history to make sure that the amendment covered the plans of church-controlled agencies, not just church-controlled agency workers who happened to be under a church's plan. It's the plans of the agencies, and I think that's demonstrated. Would you agree that if we conclude that your argument reads established by, out of subsection A, therefore we would not go along with your interpretation of the exclusion, that we never then get to the legislative history? If we conclude that 33A out of space is not ambiguous, that it requires that it be established by, not just maintained by, that we not only don't get to legislative history, we can't get to legislative history? Well, you obviously have to interpret the words as written, but so far we have six district judges that have lined up 3-3. So I think it's clear one way. I think we have to at least acknowledge that there's a possibility that someone may deem it ambiguous. I don't, because I see the words established and maintained equals the St. Peter's Plan Committee. And that's a part of A. It's parallel. It sounds like what you're saying, to give you another example. If I said any person who's disabled and a veteran is entitled to free insurance, and a question comes up as to whether persons who are in the National Guard are included in this. So to clarify, Congress passes an amendment that says that for purposes of this provision, a person who is disabled and a veteran includes a person who served in the National Guard. So a person who served in the National Guard but is not disabled comes to collect his free insurance. Can he collect it? Well, I think the language here is slightly different, because if you look at it, it doesn't say. Let me answer the question first as posed. Yeah. I have a question to you. I think the person has to be disabled, I think, obviously, in that instance. But that's not the structure. That's the gatekeeper to Judge Amler's hypothetical, and the premise is that the person is, in fact, disabled. In that case, yes, but not in this nature. How do you get out from under the gatekeeper, as the district court used the word? And the premise here is that the plan is established by a church or association of churches. Because if the intent was that you still had to be established by a church, it would say, A, would just say a plan maintained for its employees by a church includes a plan maintained. If we're talking about maintained, then we were only limited to maintained. Why did they use the word established and maintained? I think the plaintiff's reading is reading that word out of the statute. We can't do that. We're not giving credence to the word. We're giving credence to the word as modified by C in accordance with the intent of Congress. Which word is modified by C? I'm sorry? Giving credence to which word as modified by C? Established, because C includes the word established. That's in A. It says a plan established and maintained. What does it say right after that? It says established and maintained for its employees by a church or by a convention or association of churches. It doesn't say a plan established and maintained for its employees by a church or by a convention or association of churches or any organization affiliated therewith. I find it very helpful to look at the problem Congress was addressing when it amended the statute. Now you're going back to the legislative history. I think we're trying to focus on the textual analysis. I think if you look at the way ERISA is structured, it says a plan established and maintained for its employees by a church includes a plan maintained. But we're not reading it out because it still has to be an entity. You have to use the word here, if you look further on it, for a provision of retirement benefits for employees of a church. All right? Now the St. Peter's workers are not employees of a church, but everyone concedes that they can be covered because of their churches. Because C expanded it. Exactly. And I submit C1 expands what established and maintained means, to cover these plans, which was the intent of Congress. They wanted to cover the plans of these churches. If that's so clearly the case, why did St. Peter's treat this as an ERISA plan for over 20 years? I think they were uninformed, and they realized that when they were given other advice, that they had the flexibility to apply for and be recognized as a church plan. And if you don't follow that advice, excuse me, if you're a church plan, even if you paid premiums, if there was ever a default, the premiums would not be paid. That's what happened in the East Orange case. If you're not a church plan, if you're a church plan, they don't pay the premiums. And the only way you get out of that is by making the election on the 410D, which they never made. So they realized they had this ability to apply for this. ERISA was telling them they had to put $30 million in in one year because of a change in a funding formula, and that was going to cause layups and all kinds of havoc. And they applied for this, and they were able to make the same payment over three years and still accomplish their mission. So that's why they did it. But I think they qualify. The IRS has said they qualify. It says so in other cases for 30 years without any challenge. So the great irony in the case is that if the funding formula hadn't been changed, they might have continued on happily as an ERISA plan? I don't know how happily. Or reluctantly as an ERISA plan? We can't. We're obviously looking for principles here that go well beyond this now. There's been a frontal attack on this. And I think it's contrary to what's been done for 30 years. There would be disastrous effects on many institutions that have relied in good faith for 30 years. And Justice Marshall back in the day. It was so disastrous for St. Peter's. Why for 20 years did they comply with ERISA? I'm not saying it would be disastrous now if they had to all of a sudden come up with a $30 million claim deficit, if they were exposed to penalties. Because the government changed the funding formula. That's what you're saying? This changed the circumstance that caused your client to look at whether it needs to comply with ERISA. Was the government instituting a change in the funding formula? Exactly. And the whole point of the exemption is to keep religious institutions free of government regulation, to allow them to follow their government mission free of the constraints of government regulation. They're doing a fine job on their own. And they're meeting their commitment to their employees. And they want to be free to do that from government regulation. Before you sit down, you talked about legislative history, which maybe we don't need to get into. But if we do get into it, you talked about a statement of Senator Talmadge. When you look at the context of that statement, it related. He was concerned about the sunset provision in 1982 more than anything else. And whether boards who controlled certain churches could somehow do the establishing. But what concerns me against or lend support against your position, in 78, Representative Barbara Conable wanted to introduce an amendment. And he claimed it was, wanted to amend the definition to say that a plan established and maintained by a church includes a plan established and maintained by a church agency. That's what he wanted. And he didn't get that. They deleted the second usage of the word established. And that looks to me like Congress considered whether to add in what you wanted and decided not to do so. So all the more reason we should stick with the literal words of 33A and not try to read it out by the way you read 33C. I don't think so because I think one of the things going on in Congress at the time was to have great flexibility to accommodate the different forms of religion. Some were hierarchical. Some were congregational. And they wanted the flexibility to meet the situation where a pension board could establish. My question to you is why didn't Representative Conable get his way? I think it wasn't broad enough. It wasn't flexible enough. And I think what they did is much more flexible. What he suggested is exactly what you're hoping for here. No, I think they accomplished what I'm hoping for by saying establish and maintain includes a plan maintained by this committee. You're telling me if you wrote this, if you now had the power of the pen to write C as you wished it to be written, wrote, written, whatever, if you had the power of the pen to do that, you wouldn't write it differently than it currently is written? Well, in view of this case, I might do a lot of things differently. Well, one thing you'd do is you'd add the word established right before the word maintained. It's there. No, I don't think so. Because remember there's two different groups here. We have the plan committee that's maintaining it. We have St. Peter's, the hospital that established it. So that wouldn't meet that problem. And remember, we have the heading in the IRS code that says treatment like a church plan. If you maintain your plan by this committee, and this committee is controlled and associated by a church, an important agency of the church, we're going to deem it a church plan  Thank you very much. Thank you. May it please the Court. My name is Karen Handorf. There you go. There we go. My name is Karen Handorf, and I represent the plaintiff in this case. The sole issue before this Court is whether the defined benefit pension plan established by St. Peter's hospital system for its employees qualifies as a church plan exempt from ERISA. One of the issues, I mean, I guess we should say when we're doing transactions, this provision has a lot of hair on it. And the problem here is at least twofold. One, there are rulings from the IRS giving exemptions to plans like this. If we were to rule in your favor, would that nullify the IRS exemption it's given? Well, the IRS exemptions only go to the tax qualified status of the plan. So it would be up to the IRS as to whether or not it would determine that they are no longer tax qualified. The issue that we're dealing with is dealt with under, not under the code, but under ERISA itself, which provides for protections to employees, participants in the plan. And so I would think that the IRS would rethink its decision, but it wouldn't necessarily mean that plans that have been tax qualified for these years would suddenly lose their tax qualified status. What if we wrote an opinion that says that their first decision, their first letter ruling is without analysis and every subsequent one following it just cuts and pastes the same language in it? Would that carry more sway, do you think? I would think that the IRS would change its ways. It is sort of remarkable in this case, is it not? That both the IRS and the DOL, there's a consistent string of administrative rulings from both of those agencies that go directly in St. Peter's favor. Isn't that right? What should we do with them? Yes, that's correct. And I will contest that. It's one, you know, multi-decade comedy of errors by both agencies? I think it is one multi-decade comedy of errors. It's not so funny, though, because there are real-world consequences for these organizations that are trying to, you know, run social services. How can we do it that lightly? In terms of the definition of exclusion in 33A, how can we that lightly ignore what the DOL and IRS have said for so many years? Well, I think that there's a number of things that come into play. One is, at best, these agency opinions only get skid more deference. And, in fact, the opinions on their face say that they're not precedential. They're based upon the information provided by the individuals. And if you look at those opinions and determination letters, there is real no analysis of the statute there. So they should only be given a deference to the extent that they have the power to persuade. And they simply don't have the power to persuade because they don't track the language of the statute. But I would also point out that the world that we live in now probably looks a lot different than it did in 1980, in the 80s. The statute looks the same. We're not interpreting the world. I wish I had the authority to do that. I still have the authority to interpret the statute. Well, I would say that what has happened is that you have a lot of these organizations, these large health care organizations, that look very different. I mean, you have hospitals that were probably run by nuns in the 1970s and the 80s that are now not run by nuns that merge with other hospitals, that are secular hospitals that then are incorporated into a completely separate organization. Why does that matter? Because even under your reading of the statute, as long as the church establishes the plan, all of those associated agencies that have laypersons involved, many of whom are not Catholic, non-Christian, they still get the benefit of the church exemption, correct? That's exactly right. And the reason that is is because when you have a church that establishes and maintains the plan, the church is responsible for funding the plan. The church stands behind the benefit obligations of the plan. Then the purpose of the actual amendment comes into play because it's clear that the exception was put into place when the statute was initially passed in order to avoid the government looking into the internal books and confidential books and records of a church. And so the statute cards out what I believe was a very limited exception for plans established and maintained by churches, saying we're not going to look into how they spend the money that comes from their parishioners and determine that it should be spent on a plan when they may want to spend it on something else. And that was the purpose of the exemption. And what happened when Congress amended the exemption was that it realized that it didn't really reflect the reality of the church plans that existed at that time, which, again, were funded, established by the church. The church was behind the benefit obligations. But, in fact, what you had was you had this separately incorporated organization that was actually running it, and you had agency employees who were participating in it. And Congress recognized that it would be harmful to these employees to make the church plans segregate out these agency employees because the agencies might not be able to have their own church plans. And so it amended ERISA by including C, which allows for a separately incorporated organization to maintain the plan, and which allows for these church agency employees to participate in the plan. And that still goes back to the fundamental purpose of the exemption, which is to keep the government out of the internal financial affairs of the church. But here you have basically what is a commercial organization. It doesn't rely upon the church for its operations, nor does a plan rely upon a church to fund it or to back up the obligations to participants. Instead, St. Peter's gets its money, like other commercial health care organizations, from Medicare, Medicaid, insurance, and that's what's funding the plan. It makes all of its finances public through filings of 990s, through bond offerings, through publication of its own financial statements. I was wondering what you were saying about the Establishment Clause argument, because I think this bleeds into it. Is that your concern under the Establishment Clause? Yes, it is, because under the Establishment Clause, you're not supposed to favor an entity simply because it's religious. The whole church exemption goes by the wayside. That's one big favorite of religious organizations, isn't it? It does, but you can favor a religious organization if it's necessary in order to avoid entanglement. There's no tension between the free exercise and the Establishment Clause if you can get the combination which advances the free exercise that, in theory, would not interfere under the Establishment Clause. That's the way I would agree. But to avoid the free exercise Establishment Clause tension, you can have, I don't mean a lemon kind of entanglement, we won't get into lemon, but you can have the kind of involvement, I'll put it that way, as an accommodation to advance the free exercise, but if the involvement does not advance the free exercise, the involvement then becomes an entanglement, which runs into problems under lemon in the Establishment Clause. That's correct. And in addition to that, I mean, there is no, so that you can justify the provision from an Establishment Clause analysis on the grounds that it was necessary to avoid entanglement with the church. But if there is no church, there is no entanglement. And in addition to that, what you see is that the courts, in looking at the Establishment Clause, also determine whether or not it harms innocent third parties. And here, to apply the Church Point Exemption to St. Peter's, harms innocent third parties because the people who work for St. Peter's, they're not all Catholic, they're of all faiths, they rely upon the pension plan for their retirement income, they've worked for years on the assumption that they were going to get their retirement when they retired, and that they were in a pension plan that was regulated by a federal statute that protected them. And that St. Peter's, for years, paid premiums into the Pension Benefit Guarantee Corporation, which would be there in the event that the plan wasn't fully funded. KBGC has no solvency problem? Oh, it definitely does. So that might give cold comfort to the folks at St. Peter's. They might rather have the full faith and credit of the Catholic Church behind them rather than the PBGC, right? Except that there is no full faith and credit of the Catholic Church behind them because there is no money coming from the Catholic Church to St. Peter's or to the plan. They're not funding the plan at all? No, they are not. The entity responsible for funding the plan... And they're not honoring the retirement benefits of their workers? Well, I would say that these are not their workers. Their workers, they are workers of St. Peter's. That's who they are employed by. That's who their contract is with. So what I'm asking, is St. Peter's Hospital not honoring the employment obligations to its employees? It is at the current time. But by claiming church plan status, it doesn't have to in the future because none of the protections of ERISA are in place. In fact, we have another case in Illinois involving St. Anthony's health care system in which participants were promised their benefits. Then St. Anthony's decided to declare church plan status for its plan and notify people that they would be getting two-thirds of the benefit that they were told that they were going to get once they retired. So that's what happens if you are able to claim church plan status. What's the difference between establish a plan and maintain a plan? Well, I would say that establishing a plan, it all goes back to that employer-employee relationship. And when an employer establishes a plan, it takes on plan sponsor functions. It defines who it's going to cover. It has the power to amend the plan. It basically is telling its employees that it's going to provide these benefits for them in lieu of wages. When it maintains the plan, it is not exactly clear what that means. There are cases that say maintaining the plan means the continued obligation to fund the plan. Certainly maintaining the plan means more than just administering the plan because administering the plan can be a ministerial function. You can hire out a third-party administrator to administer the plan. I think in the context of the pension boards, which was what Congress was intending to deal with with the church plan amendment, there you have an entity that is collecting money from the various small parishes and agencies that get their benefits through the pension board. So it is, in effect, maintaining the plan. It's kind of like a multi-employer plan where you have an umbrella organization and you have lots of employers that pay into it. But what is true of these pension board cases is that there's a church behind it. The church is the one that's responsible ultimately for determining whether the plan is going to continue because that is a plan-sponsored decision. It sounds like what's important as a practical matter to your clients is the credit of the church qua church rather than some tangential subsidiary or associated organization of the church. Well, I would say that it probably, certainly if the church is much more financially healthy, that would be something to look at. But I think it really goes more to why the exemption was put in place in the first place, which was to avoid looking at the church. So if, in fact, you had a church here that established and maintained the plan and the church ran into difficulties. But I think you're knocking the softballs out of the park there. I think the hard part of the case isn't A, it's C, right? Right. And C, you know, why does C begin with the words established and maintained? Shouldn't C have just said maintained? I mean, we've got a potential surplusage problem there, right? Don't we have to give some credence to the usage of the word established in C-1? I think all it means is that, once again, it's clarifying that the church has to actually establish the plan because it's a church established and maintained by the plan, maybe maintained by the separate organization. But if the whole purpose of C was to bring under coverage all of the workers that are associated with the church, then it would have sufficed just to say maintained by, and they didn't need to start C-1 with established and maintained by. Well, C-1 does two things. It brings the workers in through the definition redefining employees to be the employees of the church and the church to be their employer. So in that sense, kind of needs established and maintained in that earlier provision. Let me understand why is that? If C is only focusing in on things that are already covered under a church plan in subsection A, then why increase, it's the surpluses problem is the mirror image of the reading out problem that the general asked about. Why include it in subsection A? Why include the word established? If you've already got the requirement for establishment under subsection, under 33A, when you get down to C and say for purposes of this paragraph of plan under 1, establish and maintain for its employees, maintain for its employees or plan as defined in subsection A, in paragraph A? Well, that I think could have been more clearly stated, no doubt about that. On the other hand, to read it the way the district court read it doesn't read out anything because to read it as saying that you have to have it both established and maintained in C by the church, but that it can be maintained by something else, doesn't really read out the requirement that it has to be established by the church. Let me pick up on what Judge Hardiman and Chief Judge McKee have said. What if there's a question here as to what C means and whether established is surplusage or whether we should just look to A and you have to establish it before you can deal with maintenance under C? We say it's ambiguous, and it might be. If it's ambiguous, would you concede that St. Peter's argument about the incorporation of the church plan into other statutes between 1996 and 2001 is in effect congressional ratification? No, because in those instances... There's been a number of cases where they've used the same language. Well, they've used the same language, but it's basically to explain how different provisions of ERISA or the other laws apply to a plan. So they're not really revisiting what constitutes a church plan. They're just revisiting what laws apply to a church plan, and I think that that's a very different thing. I don't think that there's any evidence that there was anything before Congress when it was looking at those particular provisions to indicate that somebody said church plans means not just plans established and maintained by churches, but by agencies that are associated and controlled by churches. There's no evidence that that was before Congress. All Congress was doing, while we know Congress may have thought that the church plan meant a plan established and maintained by a church, it was simply saying that these other laws that give some type of relief to ERISA-covered plans should also apply to church plans. But if it's ambiguous, and you've got Congress doing ratifications or changes over five years that essentially follow this, and they're meant to be inclusive, and you also have the IRS giving exemptions based on its reading of this particular provision or its understanding of this particular provision, and you're saying, well, maybe that's only going to skid more deference, but it starts adding up chips on the side of your opposing counsel. Yes, but in all of the cases that have looked at congressional ratification and have looked at agency opinions, they all basically state that if the statute on its face says one thing, it doesn't really matter about congressional ratification or agency opinions. And I think that even though the church plan definition may look a little bit confusing, that if you apply canons of construction, which the district court did and which two other district courts have done, that it leads to the inevitable conclusion that only a church can establish a church plan for two reasons. One is to read it the way the St. Peter's would like to read it because it really does read out the establishment requirement because basically under St. Peter's reading of it, it really doesn't matter who establishes the plan as long as it's administered by some entity that is connected with a church. That really isn't what ERISA is about. ERISA is about the establishment and maintenance of plans by employers, by or for employees. Under their reading, you can basically have an entity that isn't even employing these people that's establishing and maintaining a plan. It just doesn't make sense. And as Judge Amberwell, as you pointed out before, one version of this particular section said a plan is read in to see that a plan established and maintained by a church includes a plan established and maintained by an organization, and Congress took that out. And so we must presume that Congress had a reason for doing so. And we think that the answer is that it intended for only churches to establish church plans. Churches are associations of churches. Right. Yes. Thank you. Thank you, Mr. Greenberg. I'd like to start with Judge Ambrose's question, which takes us to the unbroken 30-year history of over 500 rulings by the Internal Revenue Service and all the churches and church plans that have relied upon it over these years. And I submit that the IRS knew what was going on at the time and deference should be given to its rulings. And let me explain. We started talking about the 1977 ruling, which basically said, if you don't pray, you're not a church. But I think Ms. Handorf said it does get deference. It gets a skid more deference for whatever persuasive effect it may have. And then her argument would be it doesn't have a whole lot of persuasive effect. So I don't know to what extent that helps. Well, let me say why I think it does have persuasive power. It does because of the contemporaneous experience of the Internal Revenue Service. You had a Deputy Secretary Hopper testify and try to— But we weren't there. We can only go by what they've articulated. Correct. What have they articulated? What legal reasoning is contained in any of the IRS's letter rulings or decisions? I think if you put together what was said by Secretary Hopper, where he basically—and I have it quoted in my brief on page 17. No, I'm sorry. It's on page 18. And he was—knowing what the intent was, he was criticizing it because he was saying all these workers for church for hospitals that happen to be controlled by the church are going to be exempt. And it wasn't just those workers were going to be exempt if the church established the plan. It was if the hospitals established the plan, they were going to be exempt. Because if you look at the quote he has there, it would permit— it would exclude church agencies from the protection of ERISA. And we mean if somebody works for a hospital or school and happens to be affiliated with a church, it would be permissible for that plan to provide no retirement benefits. He's referring to the plan of the hospital, not the plan of the church. And Senator Talmadge said, but I have separation of church and state issues, and I want to avoid a row with every religion in the country, Jewish, Protestant, Catholic, or otherwise. And he was— The quotation you just read is—I don't see where the plan is making reference to the ancillary organizations or associated organizations. I think you could very easily read that word plan to refer to the church-established plan. I think that's what it did mean because, remember, they were talking about broader ERISA coverage. And Congress made a conscious decision to take agency plans, which are the heart of a lot of these religious organizations, including the Catholic Church, and saying, we're going to give them the same protection as we give the churches themselves. And when we take this issue that was raised about the strength of the church, I talked earlier about the flexibility for different religious structures. So you have the Southern Baptist Convention. There is no central church to look at. There are local little congregations. And that's why Senator Talmadge made his comments. It looks to me as if Mr. Halperin was talking about the sunset provision, and he was saying that employees of church agencies would not be covered by the exclusion and would instead be subject to ERISA even if the church itself established the plan. And remember that allowing the sunset provision to go into effect was at that time Treasury's preferred position. Well, I think it's much broader than that, because if you look at all the letters of the different religious groups that were part of this coalition, they were concerned about the plans of the agencies themselves. And IRS knew that. And that's why they made their ruling in 1983, because they saw Congress rejected the position that they were advocating. And they said it no longer depends on whether the... Well, I think what happened is prior to 1983, back in the 70s, you had one administration that had an IRS that wanted the sunset provision to go into effect. And you had another administration later on that perhaps wanted something to be done to help out church-affiliated entities or church-associated entities. The IRS rulings, I'd like to point out, have been through Republican and Democratic administrations. Every case that's interpreted it has supported the exemption. No, I understand that. And we have the gratification. And I think Congress, by saying under this new statute, we mean church plan under here, they didn't say church plan under here, but all you 500 hospitals that have been relying on this, we didn't mean you. It only meant if it was by the church. They knew the rulings. They're presumed to know what the law is. This was open and notorious. There were 500 cases. And now... And they said that's the definition we want. And we're going to keep that. What about the Handlers Establishment Clause argument? I'm sorry? What about the Handlers Establishment Clause argument? I think this is easy under Amos. Because if a gym that's owned by a company that happens to be owned by the Mormon church can be exempt from Title VII, I think then certainly there's no Establishment Clause here. It clearly meets all the lemon tests. There's no prejudice to St. Peter's employees, the kind of religious... the kind of prejudice that the Establishment Clause refers to as religious harm by forcing yourself to observe somebody else's religion, like in the Caldor case, working on a day because of someone else's religion. It's not an exemption. Twenty percent of the workers in America were exempt from ERISA. And the fact that you don't get the benefit of that is not the kind of harm that's talked about in the Establishment Clause. Thank you. Thank you. Thank you. Very fine argument. Both Mr. Beeman and Ms. Hendra, thank you both. I don't think it's the pleasure of having either of you before me before, but the arguments are very, very strong. Thank you.